IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIM FOX

PLAINTIFF                                   Case No.

Vs.                                                Judge:

AMAZON.COM SERVICES LLC

DEFENDANT

**PLAINTIFF'S COMPLAINT FOR DISCRIMINATION**

**NOW COMES** Plaintiff, KIM FOX, and files this complaint to redress her employer violating TITLE VII, 42 USC § 2000e et.al. the Illinois Human Rights Act, 775 ILCS 5/2 ("IHRA") for `discrimination based upon her being a heterosexual female, a hostile work environment due to her being a heterosexual female and retaliation. For her causes of actions, Plaintiff states as follows:

1. PLAINTIFF, KIM FOX ("Fox"), is a female who resides in Frankfort, Will County, Illinois. Plaintiff is a White Female who is not gay and is heterosexual.

2. DEFENDANT, AMAZON.COM SERVICES LLC ("Amazon") is a limited Liability Company from Delaware that does business throughout Illinois. Defendant operates a facility where it employed Plaintiff at 25810 Ridgeland Ave, Monee Will County, Illinois.  Defendant refers to this location of its business as Amazon ORD4.

3. Defendant's manager for the LLC is Michael Miller at 410 TERRY AVENUE NORTH SEATTLE, WA 98109 and Defendant's registered agent is ILLINOIS CORPORATION SERVICE COMPANY located at 801 ADLAI STEVENSON DRIVE, SPRINGFIELD, IL 62703-4261.

4. Defendant engages in a business that affects interstate commerce and employed 20 persons or more persons within Illinois during at least 20 weeks of this year and in the previous year.

5. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3), and 42 U.S.C.§2000e-5(f)(3) as well as supplemental jurisdiction from State claims.

6. Plaintiff is an employee of defendant as defined by the 775 ILCS 5/2-101 (A) and 42 USC § § 2000e(f).

7. Defendant is an employer as defined by 42 USC § 2000e(b).

8. Venue is proper in this Court as Defendant is located in Will County, Illinois, and acts and actions complained of herein occurred in Will County, Illinois.

9. Plaintiff was employed by Defendant from approximately 2016 as an Associate until she was fired. Due to Plaintiff's good work record, Defendant promoted Plaintiff to the position of Process Assistant.

10. Plaintiff was an excellent employee for Defendant prior to her discipline in 2023. Prior to Defendant's discipline of Plaintiff, Defendant requested Plaintiff to do certain tasks so she would be promoted. Defendant had Plaintiff work at other locations of Defendant's business due to her superior skills. Defendant sent Plaintiff to South Carolina and Defendant asked Plaintiff to go to London. This was done because of Plaintiff's superior performance and skills.

11. Plaintiff was an excellent employee for Defendant who received many raises and good performance evaluations. Plaintiff even received employee of the month from Defendant and had no write-ups or disciplines until the actions complained of herein.

12. But for Plaintiff's sex/being heterosexual, Defendant would not have fired or disciplined Plaintiff.

13. But for Plaintiff making complaints about unlawful discrimination, Defendant would not have fired or disciplined Plaintiff.

14. Plaintiff was qualified for her job while she worked for Defendant.

15. In Title VII of the Civil Rights Act of 1964, Congress outlawed discrimination in the workplace on the basis of race, color, religion, sex, or national origin. An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, which is exactly what Title VII forbids.

16. Title VII of the Civil Rights Act of 1964 prohibits employers from taking certain actions "because of" sex. The United States Supreme Court has explained that the ordinary meaning of "because of" is "by reason of" or "on account of." In the language of law, this means that Title VII's "because of" test incorporates the simple and traditional standard of but-for causation. That form of causation is established whenever a particular outcome would not have happened "but for" the purported cause. In other words, a but-for test directs a court to change one thing at a time and see if the outcome changes. This can be a sweeping standard. Often, events have multiple but-for causes. When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid

liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.

17.  42 U.S.C.S. § 2000e-2(a)(1) imposes liability on employers when it fails or refuse to hire, discharge, or otherwise discriminate against someone because of a statutorily protected characteristic like sex.

18. An employer who intentionally treats a person worse because of sex -- such as by firing the person for actions or attributes it would tolerate in an individual of another sex -- discriminates against that person in violation of Title VII of the Civil Rights Act of 1964.

19. Title VII of the Civil Rights Act of 1964 works to protect individuals of both sexes from discrimination and does so equally. So, an employer who fires a woman, Hannah, because she is insufficiently feminine and also fires a man, Bob, for being insufficiently masculine may treat men and women as groups more or less equally. But in both cases, the employer fires an individual in part because of sex. Instead of avoiding Title VII exposure, this employer doubles it.

20. The Supreme Court has ruled that an individual's homosexuality or transgender status is not relevant to employment decisions. The Supreme Court ruled that was as it stated because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.  See Bostock v. Clayton Cnty., 590 U.S. 644, 644, 140 S. Ct. 1731, 1734, (2020).

21. Similarly, a person who is not gay and who is heterosexual is also relevant to employment decisions. That is because it is impossible to discriminate against a person for being heterosexual without discriminating against that individual based on sex.

22. When an employer fires an employee for being heterosexual, homosexual or transgender, it necessarily and intentionally discriminates against that individual in part because of sex and violates Title VII and the IHRA.

23. It is unlawful discrimination for an employer to treat an employee differently based on sexual orientation. Types of unlawful discrimination involves treating an employee differently based on his or her sex, (2) an employer taking sex into account by treating him or her differently for associating with a person of the same sex, and, (3) it involves discrimination based on gender stereotypes -- employer beliefs about the person to whom the employee should be attracted because of the employee's sex.

24. Plaintiff was targeted to be fired for her being heterosexual and a woman by the employees who were Gay or supported LBGTQ employees of Defendant. Those employees who helped fire the Plaintiff of Defendant included employees in Human Resources of Defendant who had the power to hire and fire Plaintiff and would be considered to have supervisory capacity over Plaintiff.

25. Defendant treated Plaintiff differently and inferior to other employees due to Plaintiff's sex and sexual orientation.

26. After Defendant fired the Plaintiff, Plaintiff appealed her decision pursuant to Amazon policy. Amazon refused to reinstate her, and her termination was finalized by Amazon on

January 18, 2024. The Plaintiff's sex and sexual orientation were factors in the Defendant's decision to fire the Plaintiff.

27. From the beginning of 2023 until Plaintiff was fired, Plaintiff was subjected to a hostile work environment by numerous employees of Amazon due to Plaintiff being heterosexual and not gay.

28. The discriminatory actions complained of herein appear to have started in late August/early September 2023, at such time, Defendant held a meeting with managers which Defendant called a flow meeting. Plaintiff was required to attend the flow meeting. At the flow meeting, a manager of Plaintiff, Mulan Bazile ("Mulan"), brought up and asked what they would do with an employee named Pria Joiner "Pria"). Pria was a female transitioning to a male. At the meeting, one of the managers asked why Pria had so much idle time, which Defendant calls as time off task. Mulan stated that Pria is always in the bathroom and not working. An employee then mentioned that Pria used both male and female bathrooms and alternated between them. Plaintiff then stated this was a problem at another facility and informed the other employees that an individual who was born male at the Amazon Joliet facility would alternate bathrooms as well as which sex they identified wish on different days as the person chose. The individual had a penis and would switch how he dressed on numerous days. Another employee complained about it, and she was told that if the person did not like being in the bathroom with a person who had a penis and changed sexes based upon the day, the person should go to another bathroom. Plaintiff said nothing negative about Pria. Mulan in the past had referred to Pria as "she" or "it."

29. Plaintiff during her employment had little to any conversations with Pria.  The only time Plaintiff remembers speaking to Pria while Plaintiff was employed by Defendant was that Pria was violating a company policy that Pria wore earbuds in work.  Plaintiff asked Pria to abide by the Amazon Policy to not wear earbuds while working.  Otherwise, Plaintiff never spoke with Pria.

30. Tim Doud --homosexual male—(hereinafter referred to as "Tim") an employee of Amazon, met with to Zel Crete ("Zel"), and stated that Plaintiff needed to be reprimanded for making a statement about a person using the bathroom.  Zel went to Plaintiff and told Plaintiff that she better not say anything about the bathroom use of employees as he would hate to see Plaintiff lose your job over something like this.

31. Plaintiff's statement about that a person was told to leave the bathroom if they were not comfortable is an acceptable practice for an employee and was the practice at other Amazon facilities.

32. Tim routinely violated rules by refusing to wear steel-toed shoes as well as other rules. Defendant refused to discipline Tim for his continued violations of Defendant's policies. Tim would also routinely clock in 10 to 15 minutes early which was against Amazon rules. Tim committed time theft which Amazon chose to ignore,

33. Jessica Acosta --Bisexual female—("Jessica")  witnessed Zel's conversation with Plaintiff. Jessica was having sexual relations with Tim Doud's brother, Steve Doud ("Steve"). Jessica went to Tim and told Tim that Plaintiff did not take the problem seriously.  After this, Tim made a report to Amazon's ERC.

34. Plaintiff was on leave for Defendant from approximately October 17, 2023, through November 6, 2023, as Defendant's business was being renovated.

35. On or about October 23, 2023, Plaintiff received a telephone call from a Human Resources Investigator named Tanya Sanchez stating that she needed to talk to the plaintiff regarding an investigation. The Plaintiff stated she was not in the area as she was in Alabama and would have to call back Sanchez when Plaintiff returned to Illinois.

36. When Plaintiff returned, Plaintiff spoke with Tanya Sanchez, the HR investigator. Sanchez let Plaintiff know that the investigation was pertaining to Plaintiff. The investigator started to ask questions to Plaintiff about Pria. The investigator asked that Plaintiff referred to Pria as an "it." Plaintiff said no as she never did. Sanchez asked Plaintiff several times the same question several times at different times in the interview whether she called Pria an "it." Plaintiff heard Mulan refer to Pria as "it." The Human Resource investigator also asked Plaintiff numerous other unlawful questions such as what Plaintiff would do if Pria was in the bathroom with her. Plaintiff stated that she would go to another bathroom as she would feel uncomfortable. The investigator then stated so you don't feel comfortable using the bathroom with Pria. Plaintiff said she would not feel comfortable, and it was her right to use a different bathroom. Sanchez also asked Plaintiff if she asked Pria what Pria wanted to be referred to—a he or she. Plaintiff again stated she did not communicate with Pria except the one time to inform Pria to not wear earbuds while working pursuant to company policy. Plaintiff notified Sanchez that other managers had spoken numerous times about Pria and said that Pria used Pria's Gender as it would best help Pria. Also, the other managers referred to Pria as her. Plaintiff also stated to Sanchez If Pria liked the

person, Pria did not care if a person called her a girl or guy. However, if Pria did not like a person, Pria would become belligerent and would say she was a man. Plaintiff told Sanchez that Pria used both bathrooms. Plaintiff was told by the HR rep that she should not discuss that matter with anyone as it was confidential and if she did she would be disciplined.

37. As of the filing of this Complaint, Pria is believed to have transitioned to a male but continues to use both male and female bathrooms. Defendant has not reprimanded or disciplining Pria for using both male and female bathrooms.

38. The questions asked by Sanchez to Plaintiff was unlawful discrimination as the questions asked of Plaintiff what Plaintiff's sexual preference was. The questions asked of Plaintiff is direct evidence of discrimination and violate Title VII and the IHRA.

39. It is a violation of the Civil Rights Acts to ask hypothetical questions to an employee about civil rights matters such as what a person would do if a person of another sex went to a bathroom while they were in the bathroom or to ask the employee their race, religion or sexual orientation.

40. Corina Demkowicz ("Corina"), another employee of Amazon, who was having a sexual relation with Pria made disparaging comments about Plaintiff due to Plaintiff's sex and/or sexual orientation. Corina stated that she would get Plaintiff fired from Amazon. Corina did this because of Plaintiff's sexual orientation and Gender. Corina, on numerous occasions openly stated that she would go to outside organizations to get Plaintiff fired. Corina also told numerous other employees about the investigation in Pria. Corina did actions so

Plaintiff would be fired by Defendant. These are all bullying tactics against Defenseman's nonbullying policy. Corina was not disciplined for any of her actions.

41. Corina intentionally violated numerous policies of Defendant such as wearing steel-toed shoes and putting her hair up when it was too long. Defendant chose based upon the person's sexual orientation to discipline the employees and how the employees would be treated and whether the employee would be listened to and believed based upon their sexual orientation.

42. Defendant's HR notified LBGTQ employees about Plaintiff's answer relating to question in the investigation. The LBGTQ employees became furious at Plaintiff and wanted openly called for Plaintiff's discipline, demotion and termination from employment.

43. After the investigation with Plaintiff about what she would do if a transgendered woman were in the bathroom with her, the pro-LBGTQ employees started calling Plaintiff homophobic, mistreated and bullied the Plaintiff, and demanded Plaintiff be fired.

44. Defendant treated LBGTQ employees more favorably than it did heterosexual employees in the terms and conditions of employment, including speech rights, dress codes and enforcing policies.

45. When Plaintiff returned to work on November 6, 2023, associates and employees with whom Plaintiff was friendly before Plaintiff's time off would not associate or talk to when Plaintiff returned to work. Plaintiff had no idea of what happened to her and why employees were not speaking with her and mistreating her, another associate, who was friendly with Plaintiff, told Plaintiff that employees of Defendant informed other employees that Plaintiff was discriminatory against Pria and was fired for it.

46. Defendant notified employees about what Plaintiff stated in the investigation and numerous false rumors about Plaintiff being homophobic and against LBTGQ rights.

47. Defendant has a policy not to discuss discrimination investigations with other employees and a no-bullying policy. Plaintiff was informed of this policy when she spoke with Sanchez. Defendant's employees, including its human resource department, violated said policy of not discussing information in an investigation regarding Plaintiff.

48. After Plaintiff was not fired from the ERC complaint, Tim and the other pro-LGBTQ employees started a campaign against Plaintiff to get Plaintiff fired due to Plaintiff being heterosexual.

49. Another pro-LGBTQ employee Felisha Wills ("Felisha") also stated that she would help get rid of Plaintiff.

50. Corina went to numerous employees asking them to write messages against Plaintiff to get Plaintiff fired. One associate said no to Corina. Corina tried to bully that person and put extreme pressure on this associate to acquiesce to Corina's demand to help get Plaintiff fired. Corina told the associate that she would get enough to get the Plaintiff fired.

51. On November 14, 2023, Jessica, Tim, and Tim's brother Steven, made Numerous disparaging remarks about Plaintiff on Amazon's message board called the Voice of Associates ("VOA"). Plaintiff saw three messages on the message board. Plaintiff went to Defendant to take down the messages, and Defendant refused.

52. Some of the messages on the message board were as follows.



53. Defendant allows LBGTQ employees to disparage and bully heterosexual employees and has different standards for heterosexual employees and LBGTQ employees.

54. Defendant relied on and used Corina, Felisha, Tim, Jessica, and other pro-LGBTQ employee's input to fire Plaintiff.

55. Plaintiff never said anything that was anti LBTGQ while working for Defendant, yet she was being was lied about by several employees of Defendant who wanted her fired for being Heterosexual.

56. Paul Taylor is an HR representative for Defendant. Paul Taylor is believed to be gay/bisexual and extremely pro-LBGTQ rights. Paul Taylor treated Plaintiff inferior to other employees due to Plaintiff being heterosexual and due to Plaintiff's sex.

57. An instance of Paul Taylor's bias towards LBGTQ employees occurred recently in May/June 2024. Paul Taylor was in charge of the Pride program for Defendant at its facility and asked for managers to sign up to participate. No manager signed up. Taylor then reprimanded the managers for not participating in the Pride program.

58. The Defendant has a no-bullying policy. Defendant allowed the LGBTQ employees to bully Plaintiff in violation of their policy.

59. Defendant used its bullying policy to harass the Plaintiff and enforced hat policy unequally for LGBTQ employees than it did to Plaintiff because of Plaintiff's sex and sexual orientation.

60. Plaintiff made numerous complaints to Paul Taylor and others at Defendant relating to the bullying, lies, disparagement of Plaintiff and mistreatment she was enduring due to her being a heterosexual female.

61. Plaintiff sent an email to Defendant on or about November 16, 2023. The email stated:

> Hi Paul,I wanted to reach out to you in person but since I am off and did not want to wait I thought I would send an email instead. I am having some concern about retaliation and bullying towards me from a couple associates due to my outcome of the investigation that first off should have been private and second nobody should have known what my outcome was before myself. People here talk all the time, I get it but to continuously spread gossip and rumors and lies about me is a form of bullying. How am I to be able to do my job effectively and positive with all of this coming at me? The VOA comments talk about the rights and policies that were broken but yet people only pick and choose what policy they want to stand for. I am in this situation because it all started with me making many statements about earbuds, hair, shoes, time theft, hoods up, and crop tops showing belly buttons. A few of the individuals that have reported me to the ethnic line that put me into the investigation I believe was for retaliation because in the meetings I wasn't always the only one to use the wrong word or name but I was the one they wanted gone. 11/14/23 Corina has been going around asking associates if they would comment on the VOA board after she post what she has saved what wrote about me as well, one associate asked to left out of it had told her "No I have nothing to do with this, I wasn't there, I didn't hear, anything, and I don't know Kim like that to say anything" and this is a clip of what was sent in the email I received after the case was closed................

Plaintiff also attached an email for Ms. Sanchez relating to the investigation which



As a reminder, Amazon has a policy prohibiting retaliation against anyone who has raised a complaint or who has participated in an investigation. Amazon expects that anyone who participates in an investigation will not engage in any retaliatory behavior – this applies to and has been discussed with all the parties in the investigation. In addition, Amazon will only discuss this investigation with those individuals who have a legitimate business need to know.

Thank you again for your cooperation.

Tanya Sanchez
Sr. HR Investigator
850-483-0676| santanyr@amazon.com

62. Plaintiff went to Defendant and her supervisors and asked that the hate speech against her be taken down. Defendant refused to take down the defamatory remarks about Plaintiff. The defamatory remarks harmed the Plaintiff.

63. Plaintiff provided numerous names of witnesses to her complaints of discrimination to Defendant. The HR rep never contacted the witnesses that would have substantiated Plaintiff's claims.

64. Defendant failed to investigate Plaintiff's complaints of discrimination and did not open an investigation. Plaintiff made numerous requests to stop the work environment, but Defendant refused to look into her complaints.

65. On November 13, 2023, Plaintiff received discipline. Plaintiff was put on a 1 year on record and 90-day probation that if she did anything wrong, she would be fired.

66. Plaintiff had never been written up before this, nor had any discipline or warning during her entire career with Defendant.

67. When Plaintiff stated that she thought Corina made the report, Tanya Sanchez said no and Plaintiff said then it was Tim that made the report against Plaintiff.

68. Paul Taylor refused to file a charge of discrimination or retaliation for the Plaintiff, but when an LBGTQ employee approached him with concerns, he would open an investigation relating to the Plaintiff. Taylors refusal to treat Plaintiff the same as LGBTQ employees relating to filing complaints of discrimination violated Title VII and IHRA.

69. The treatment by Paul Taylor and others in HR to Plaintiff was demeaning, hostile, and offensive. These individuals refused to listen to the Plaintiff's concerns and, due to their bias, refused to do anything to stop the hostility of numerous pro LBGTQ employees and the abusive work environment Plaintiff experienced.

70. On or about December 13, 2023, Steven Doud, Tim's Brother, assaulted the Plaintiff. Steven Doud was walking the other way and saw Plaintiff. He turned around and came at Plaintiff in a threatening manner; Steven Doud clenched his fist and flinched it at Plaintiff as if he were going to hit Plaintiff.

71. Plaintiff told Mulan that Steven Doud, Tim Doud's brother, flinched at Plaintiff and threatened her physically to harm her. Mulan stated that she communicated the information to HR and that the Plaintiff should go to HR and make a report. The HR department had no record of the incident being reported. After repeated requests, Defendant made Plaintiff write the report, tell the story, and then write it again to harass Plaintiff. Paul Taylor's actions showed Plaintiff he was not interested in doing anything for

her. While writing the report, Taylor would barely acknowledge Plaintiff and continued to read or eat his lunch while Plaintiff spoke. Taylor's actions towards Plaintiff were intolerable to a human being who was reporting her safety and abusive environment.

72. The incident with Steve Doud should have been taped on video camera surveillance. Plaintiff requested that she be able to see the tape to Paul Taylor and for him to get the footage. Defendant ignored the instance and is believed to have destroyed the tape of the incident.

73. Plaintiff believes that Defendant erased the video footage.

74. The actions complained of hereof had the cause and effect on Plaintiff to endure extreme mental stress and physical stress, which forced her to take medication for anxiety and increased blood pressure.

75. After Plaintiff left Pauls' Taylor's office relating to assault, Taylor made disparaging remarks about Plaintiff that were overhead by others. Taylor was biased against Plaintiff due to Plaintiff sex and/or sexual orientation. Taylor also retaliated against Plaintiff for Plaintiff asserting her right to be free of discrimination.

76. On December 18, 2023, Taylor required Zel to fire the Plaintiff. The reason given to Plaintiff was that Plaintiff cussed in front of an associate.

77. The incident where Plaintiff allegedly cussed was denied by Plaintiff and Plaintiff had a witness who stated that Plaintiff never cussed. In fact, the Plaintiff was called a "Bitch" by that employee and reported it to management. The employee Felicia Willis had already agreed with the LBGTQ community at Defendant that she would help get Plaintiff fired.

Only after Plaintiff reported Felicia of calling her a "Bitch" did Felicia make the false accusations about Plaintiff cussing in front of her.

78. After Plaintiff was fired, Felecia bragged to others who were LBGTQ that she was the one that got Plaintiff fired.

79. Defendant has created and stated different reasons at different times for Plaintiff termination.  No employee was disciplined or fired due to the actions that they did to Plaintiff.

80. Defendant subjectively uses its policies in a discriminatory manner such as its no swearing policy.

81. Plaintiff did not swear in front of an employee of Defendant. Defendant enforces its policies in a discriminatory manner regarding swearing and ignores employees' swearing unless it wants to justify or create a situation to discipline an employee.

82. Defendant has used swearing in other instances to fire other employees as a pretext for discrimination and as a method to terminate employees it wants to fire.

83. Plaintiff was subjected to numerous offensive comments on a regular basis by employees of Defendant. Defendant's employees made false and defamatory statements about Plaintiff and mistreated Plaintiff.  Plaintiff was subjected to assaults and even physical battery by employees of Amazon while she worked for Defendant. Employees and management of Defendant who were pro-gay rights made false statements made about Plaintiff.

84. Defendant's Human Resources Department refused to listen to Plaintiff's complaints and refused to take action to stop the hostile work environment and disparate treatment that Plaintiff experienced while working for Defendant.

85. The offensive and abusive conduct complained of herein occurred regularly until the time Plaintiff was fired. Plaintiff found the harassment offensive and abusive.

86. The offensive conduct created a hostile and intimidating and/or abusive work environment for me and interfered with Plaintiff' ability to do her job.

87. Defendant terminated Plaintiff's employment within a short time of Plaintiff making her last complaint of discrimination.

88. Defendant's employees' conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

89. At the time the conduct occurred, as complained of herein by Defendant's employees, Plaintiff believed that the conduct made her work environment hostile and/or abusive.

90. Defendant knew or should have known about the conduct alleged in this Complaint that were done to Plaintiff.

91. The actions of Defendant that harmed the Plaintiff were malicious, oppressive or in reckless disregard of Plaintiff's rights. And/or the conduct by the Defendant was either accompanied by ill will, or spite, or if it is for the purpose of injuring Plaintiff.

92. Plaintiff has requested her personnel file from Defendant in writing pursuant to Illinois Personnel Record Review Act (820 ILCS 40/2). Defendant has refused to provide said personnel file and has violated 820 ILCS 40/2.

## COUNT I  SEXUAL DISCRIMINATION-TITLE VII

93. Plaintiff realleges paragraphs 1-92 in Count I as set forth herein.

94. 42 USC § 2000e-2(a)(1) makes it an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's sex and/or sexual preference.

95. Defendant violated 42 USC § 2000e-2(a)(1) by its actions towards Plaintiff when it disciplined Plaintiff, asked questions of Plaintiff relating to her sexual orientation, fired Plaintiff, and treated Plaintiff inferior compared to other employees.

96. Defendant's termination, discipline as well as the differences in Plaintiff's terms and conditions of employment and other actions which Plaintiff was subjected to by Defendant was done because of Plaintiff being a female, and or due to Plaintiff's sexual orientation and the Employer's actions were unlawful discrimination against Fox in violation of 42 USC § 2000e-2(a)(1).

97. The actions of Defendant damaged the Plaintiff.

## COUNT II- SEX DISCRIMINATION/SEX ORIENTATION

98. Plaintiff realleges paragraphs 1-97 in Count I as set forth herein.

99. 775 ILCS 5/1-103 (O) Sex defines "Sex" means the status of being male or female.

100.      775 ILCS 5/1-103 (O-1) defines "Sexual orientation" means actual or perceived heterosexuality, homosexuality, bisexuality, or gender-related identity, whether or not traditionally associated with the person's designated sex at birth. "Sexual orientation" does not include a physical or sexual attraction to a minor by an adult.

101.     (775 ILCS 5/1-103(Q) defines "Unlawful discrimination" as discrimination against a person because of his or her actual or perceived: race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service as those terms are defined in this Section.

102.     775 5/2-102 (A) makes it a civil rights violation to discriminate against an employee when it discharges, disciplines, and terms and conditions of an employee's employment. Additionally, 775 5/2-102 (A) makes it illegal to create a hostile work environment for an employee based on an individual's sex or sexual orientation.

103.     Defendant's termination of Plaintiff asking Plaintiff questions of her sexual orientation, discipline of Plaintiff as well as the differences in Plaintiff's terms and conditions of employment and other actions which Plaintiff was subjected to by Defendant was done because of Plaintiff being a female, and or due to Plaintiff's Sex and/or Sexual Preference and the Employer's actions were unlawful discrimination against Fox in violation of 775 ILCS 5/1-103 (Q) and 775 5/2-102 (A).

104.     The actions of Defendant damaged the Plaintiff.

**COUNT III  HOSTILE WORK ENVIRONMENT**

105.     Plaintiff realleges paragraphs 1-104  into Count III as set forth herein.

106.      The IHRA at 775 ILCS 5/2-101(E-1)defines harassment as follows:

"Harassment" means any unwelcome conduct on the basis of an individual's actual or perceived race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, unfavorable discharge from military service, citizenship status, or work authorization status that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. For purposes of this

20

definition, the phrase "working environment" is not limited to a physical location an employee is assigned to perform his or her duties.

107. Defendant's employees' actions were unwelcome conduct on the basis of Plaintiff sex, sexual orientation or perceived sexual orientation that had the purpose or effect of substantially interfering with Plaintiff's work performance and/or created an intimidating, hostile, or offensive working environment.

108. The action of Defendant also violated 775 ILCS 5/2-101(E-1) of the IHRA.

109. The HR department had the ability to hire and fire the Plaintiff and was in fact a supervisor for Plaintiff for purposes of liability in this case.

110. The HR department harassment imposes strict liability for their actions against the Plaintiff as they were supervisors pursuant to the IHRA.

111. Plaintiff was damaged by Defendant's actions.

## COUNT IV- HOSTILE WORK ENVIRONMENT -TITLE VII

112. Plaintiff realleges paragraphs 1- 111 as set forth herein.

113. Defendant's actions to Plaintiff were unwelcome conduct on the basis of Plaintiff's sex that had the purpose or effect of substantially interfering with Plaintiff's work performance and created an intimidating, hostile, or offensive working environment.

114. Plaintiff found the harassment offensive, unwanted and abusive by Defendant's employees including its general managers who had supervisory capacity over Plaintiff.

115. The abusive conduct occurred which Defendant did to Plaintiff occurred because Plaintiff was a woman who was heterosexual.

116. The conduct that Defendant did towards Plaintiff was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

117. At the time the conduct occurred, Plaintiff believed that the conduct made his work environment hostile or abusive.

118. Plaintiff was fired while she was employed by defendant after she made a complaint of discrimination. Defendant's firing of the Plaintiff was a tangible employment action.

119. Defendant's actions violated 42 USC § 2000e et seq by creating an abusive work environment due to Plaintiff's sex and her being heterosexual.

120. Defendant did not take reasonable steps to correct the situation and/or prevent harassment from recurring.

121. Defendant's actions towards Plaintiff damaged Plaintiff. Plaintiff has suffered monetary loss, loss to his reputation, incredible pain and suffering and other damages.

122. The offensive conduct created a hostile and intimidating work environment for Plaintiff and interfered with Plaintiff's terms and conditions of employment and his ability to do Plaintiff's job.

123. The actions of Defendant toward Plaintiff were malicious or was in reckless disregard to PLAINTIFF'S rights.

## **COUNT V RETALIATION**

124. Plaintiff realleges paragraph 1-123 into Count V as set forth herein.

125. Title VII of the Civil Rights Act of 1964 , 42 U.S.C. § 2000e-3(a), makes it unlawful employment practice for an employer to discriminate against any of his employees or to discriminate against any individual because he has opposed any practice made an unlawful employment practice.

126. The Illinois Human Rights Act makes it unlawful for an employer to fire an employee in retaliation for making a complaint of discrimination or asserting a right to protection under the IHRA.  775 ILCS 5/6-101(A) makes it is a violation of the IHRA to retaliate against a person who has opposed the which he or she reasonably believes and in good faith believes to be unlawful discrimination.

127. Plaintiff a short time after she made a complaint of discrimination to Defendant's Human Resources department subjected Plaintiff to increased Scrutiny and disparagement from other employees, including the HR department and was fired a short time after her last complaint of discrimination.

128. Defendant's employees treated Plaintiff differently due to Plaintiff making complaints of discrimination against LBGTQ employees.

129. Defendant has an agenda that it treats LBGTQ employees better than heterosexual employees.

130. Defendant's Human Resources Department conspired to terminate Plaintiff and created reasons or treated Plaintiff inferior to other employees in retaliation for Plaintiff making complaints of discrimination to her employer.

131. Defendant's HR department failed to investigate any of the Plaintiff's complaints regarding a hostile work environment and the  actions of Defendant's employees.  The HR employee who investigated the Plaintiff made disparaging remarks about Plaintiff which were stereotypical relating to a homophobic person.

132. Defendant disciplined and fired Plaintiff to stop employees and Plaintiff from making complaints of discrimination against LGBTQ employees so that others will not come forward when harassed and mistreated by LGBTQ employees.

133. The actions of Defendant's employees were done in front of numerous other employees and individuals and were accepted by Defendant and encouraged by Defendant. Defendant knew of the hostile work environment, Defendant's HR stated that the environment was toxic but did nothing to correct it.

134. Defendant's disparate treatment of Plaintiff and termination of Plaintiff's employment in retaliation for Fox asserting her rights under TITLE VII ,42 U.S.C. § 2000e-3(a) and or the Illinois Human Rights Act.

WHEREFORE, Plaintiff, Kim Fox, prays that this Court (i) declare that the employment practices complained of in this complaint are unlawful in that they violate Title VII and the IHRA; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of Title VII and/or the Human Rights Act; (iii) order the Defendant to make the Plaintiff whole with full back pay, payment of her stock options, and reimbursement for all of benefits including but not limited to loss of pension, retirement, insurance, Social Security and other monetary and non-monetary benefits, and prejudgment interest, all in amounts to be proved at trial; (iv) order that the Defendant pay Plaintiff a sum in excess of $300,000 as compensatory and punitive damages; (v) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (vi) order the Defendant to pay

Plaintiff's costs and expenses and reasonable attorneys' fees as provided in the statutes incorporated herein in connection with this action; and (vii) grant such other and further relief to the Plaintiff as the Court deems just and proper.

/s/Steven D. Horak
Steven D Horak # 6207126
940 Knollwood Dr
Buffalo Grove IL 60089
847-877-3120
Steve@stevenhoraklaw.com
Attorney for Plaintiff Kim Fox


## JURY DEMAND

**PLAINTIFF DEMAND A JURY RELATING TO THIS MATTER.**